UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AQUILA ALPHA LLC,

               Appellant,

   -against-

HOWARD M. EHRENBERG, In his
capacity as Liquidating Trustee of Orion
HealthCorp, Inc., et al., CHT Holdco, LLC,
and CC Capital,

               Appellee.

**<u>MEMORANDUM AND ORDER</u>**

Case No. 22-cv-2148 (FB)
Bankr. Case No. 8-18-8053 (AST)

*Appearances:*
*For Appellant*:
ANTHONY F. GIULIANO
Giuliano Law, PC
445 Broadhollow Rd., Ste. 25
Melville, NY 11747

*For Appellee*:
JOHN P. AMATO
MARK T. POWER
JOSEPH ORBACH
BRIGITTE R. ROSE
Thompson Coburn Hahn & Hessen LLP
448 Madison Ave., Ste. 1400
New York, NY 10022

**BLOCK, Senior District Judge:**

Aquila Alpha LLC ("Aquila") appeals a March 31, 2022 order of the United

States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy

Court") (Alan S. Trust, J.) denying its motion to vacate a default judgment entered

against it. The default judgment had been obtained by Howard M. Ehrenberg in his

capacity as liquidating trustee of Appellee debtors (the "Liquidating Trustee"),

including CHT Holdco, LLC ("CHT"), Orion HealthCorp, Inc., et al., and CC

Capital (collectively, "Debtors"). For the following reasons, the Bankruptcy Court's order is affirmed.

## I. Factual and Procedural Background

The Liquidating Trustee was appointed pursuant to the Debtors' joint liquidation plan effective March 1, 2018. On March 16, 2018, Debtors filed a voluntary petition for relief from their creditors, pursuant to 11 U.S.C. § 101, et seq. They then filed an adversary proceeding on April 4, 2018 in the Bankruptcy Court against various corporate entities, not including Aquila. The adversary suit sought, inter alia, to recover a $23.7 million mortgage (the "Mortgage") on real property (the "Mortgaged Property") that had been transferred to Aquila by Paul Parmar ("Parmar"). Parmar, a named defendant to the adversary proceeding, had served as Chief Executive Officer and Chairman of the board of directors of debtor corporation CHT. The Mortgage had been granted to Parmar in 2008, who then formed Aquila in 2016 to purchase it for $3.8 million. The suit alleged that Parmar had funded Aquila's purchase of the Mortgage with $3.8 million transferred fraudulently from CHT to Aquila, with CHT receiving nothing in return.

Aquila was added as a defendant in an amended complaint (the "First Amended Complaint") filed on June 4, 2018. On June 6, 2018, Aquila received service of process via first class mail at two addresses: (1) in Dover, Delaware, at an address of Aquila's registered service agent (the "Dover Address"), and (2) in

Hazlet, New Jersey, at Aquila's business address (the "Hazlet Address"). Aquila filed no answer and made no motions in response to the First Amended Complaint. The address of Aquila's registered service agent changed in 2020.

The Liquidating Trustee was appointed in February 2019. In September 2019, he obtained the Bankruptcy Court's permission to settle certain claims lodged in the First Amended Complaint. John Petrozza ("Petrozza"), Aquila's purported owner, objected to the settlement on behalf of himself and two other entities, but not on behalf of Aquila. The Bankruptcy Court approved the settlement on July 24, 2020, issuing an order authorizing the Liquidating Trustee "to file an amended complaint to realign the parties and assert" claims assigned to the Liquidating Trustee in the settlement.

Pursuant to this order, the Liquidating Trustee filed a second amended complaint (the "Second Amended Complaint") on January 14, 2021. The Second Amended Complaint reproduced the same allegations against Aquila as were contained in the First Amended Complaint and did not add new claims against it. It was served on Aquila at the Dover and Hazlet Addresses and was given to Charles Simpson ("Simpson"). Simpson had filed pleadings on Aquila's behalf, but later notified the Bankruptcy Court that he no longer represented Aquila. Aquila made no response to the Second Amended Complaint.

The Liquidating Trustee filed a motion for default judgment against Aquila on August 5, 2021 with respect to the Second Amended Complaint. Debtors' motion was served via mail to the Hazlet and Dover Addresses and emailed to Simpson, who was still listed as Aquila's counsel of record. Aquila filed no response or objection. The Bankruptcy Court granted the motion for default and a default judgment was entered on October 29, 2021, which granted Debtors legal and equitable ownership of the Mortgaged Property. On November 10, 2021, Aquila filed motions to vacate and prevent enforcement of the default judgment under Federal Rule of Civil Procedure 60(b)(4). After briefing and an evidentiary hearing, the Bankruptcy Court denied Aquila's Rule 60(b) motion on March 31, 2022. *See In re Orion HealthCorp, Inc.*, No. 18-71748-67-AST, 2022 WL 993850 (Bankr. E.D.N.Y. Apr. 1, 2022). Aquila filed a notice of appeal on April 11, 2022.

## II. Legal Standard

On an appeal from a bankruptcy court, district courts review conclusions of law de novo, while scrutinizing findings of fact for clear error. *In re Purdue Pharms. L.P.*, 619 B.R. 38, 47-48 (S.D.N.Y. 2020) (citing *Elliot v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 152 (2d Cir. 2016); *In re Republic Airways Holdings Inc.*, 582 B.R. 278, 281 (S.D.N.Y. 2018)). Findings of fact may be overturned as "clearly erroneous only if this Court is 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* at 48

4

(quoting *Adler v. Lehman Bros. Holdings Inc. (In re Lehman Bros. 3 Holdings Inc.)*, 855 F.3d 459, 469 (2d Cir. 2017)). "Particularly strong deference must be given a bankruptcy court's findings of fact based on credibility assessments of witnesses it has heard testify." *In re Pisculli*, 426 B.R. 52, 59 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477 (2d Cir. 2011). Holdings that involve mixed issues of fact and law "are generally subject to *de novo* review, although the standard applied 'depends . . . on whether answering it entails primarily legal or factual work.'" *In re Purdue*, 619 B.R. at 48 (quoting *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S.Ct. 960, 962 (2018)). Underlying evidentiary rulings, meanwhile, are reversed "only for abuse of discretion." *United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014). Rulings on a motion to vacate under Rule 60(b)(4) are subject to de novo review, *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005), while their underlying factual findings are reviewed for clear error, *New York v. Green*, 420 F.3d 99, 105 (2d Cir. 2005).

Relief from a judgment under Rule 60(b)(4) is "extraordinary," *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986), appropriate only where "the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law," *Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 194 (2d Cir. 2006) (cleaned up). A judgment may be declared void under Rule 60(b)(4) for lack of jurisdiction only when the court "plainly usurped

jurisdiction" or "there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction." *Cent. Vermont Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 190 (2d Cir. 2003). Relief for a due process violation, on the other hand, must be based on a "fundamental" deprivation "of notice or the opportunity to be heard." *Sanchez v. MTV Networks*, 525 Fed. App'x 4, 6 (2d Cir. 2013). Such a deprivation must be greater than the failure to "follow procedural rules in 'every particular.'" *Id.* (quoting *Neilson v. Colgate–Palmolive Co.,* 199 F.3d 642, 654-56 (2d Cir. 1999)).

### III. Discussion

Aquila challenges the denial of its Rule 60(b) motion on the basis that the Bankruptcy Court lacked personal jurisdiction over Aquila and that it misapplied the relevant factors in declining to vacate the default judgment.

### A. Personal Jurisdiction

Aquila argues that the Bankruptcy Court lacked personal jurisdiction over it for three reasons: (1) Aquila was joined to the First Amended Complaint without leave from the Bankruptcy Court, (2) the Second Amended Complaint was either

time barred under 11 U.S.C. § 546 or improperly served, and (3) the Default

Motion was not properly served under Local Bankruptcy Rule 7055-1.

### 1. Joinder to the First Amended Complaint

Aquila invokes Federal Rule of Civil Procedure 21, applicable to bankruptcy

proceedings through Bankruptcy Rule 7201, to argue that Debtors needed leave

from the Bankruptcy Court to join Aquila as a defendant to the First Amended

Complaint. Rule 21 permits a court to "add or drop a party" from a suit "[o]n a

motion or on its own." Fed. R. Civ. P. 21. However, courts also allow the addition

of parties through amendment under Rule 15(a), made applicable by Bankruptcy

Rule 7015, which "gives plaintiffs an unequivocal right to file one amended

complaint without leave of court before defendant's filing of a responsive

pleading." *Gaming Mktg. Sols., Inc. v. Cross*, 528 F. Supp. 2d 403, 406 (S.D.N.Y.

2007). Rule 15(a)(1) allows amending as of right within 21 days after service of a

responsive pleading or a Rule 12 motion "if the pleading is one to which a

responsive pleading is required." Fed. R. Civ. P. 15(a)(1)(B). Amendment under

Rule 15(a) can include the addition of parties. *See Washington v. New York City

Bd. of Estimate*, 709 F.2d 792, 795 (2d Cir. 1983) (approving joinder of defendants

before responsive pleading was filed); *see also New Falls Corp. v. Soni Holdings*,

No. 19-0449, 2021 WL 855939, at *6 (E.D.N.Y Mar. 5, 2021), *aff'd* 2022 WL

2720517 (2d Cir. Jul 14, 2022) (holding that under *Washington*, Rule 15 permitted plaintiff to amend pleading to add party without leave of court).

Aquila cites two district court orders holding that Rule 21's requirement for leave trumps the general amendment requirements of Rule 15(a). *See Momentum Luggage & Leisure Bags v. Jansport, Inc.*, No. 00 CIV. 7909 (DLC), 2001 WL 58000, at *1 (S.D.N.Y. Jan. 23, 2001); *Conservation L. Found., Inc. v. All-Star Transportation*, LLC, No. 3:21-CV-00201 (JBA), 2022 WL 16706958, at *4 (D. Conn. Nov. 4, 2022). However, the Second Circuit's holding in *Washington* controls here. *See Clarke v. Fonix Corp.*, No. 98 CIV. 6116 (RPP), 1999 WL 105031 (S.D.N.Y. Mar. 1, 1999) (denying dismissal of amended complaint on basis that "the plaintiffs failed to obtain leave of the Court to add new defendants" because *Washington* is controlling), *aff'd on other grounds*, 199 F.3d 1321 (2d Cir. 1999). Here, Aquila concedes that no responsive pleading or Rule 12 motion was filed in response to the Complaint. Thus, Aquila never initiated the 21-day limit for amendment as of right under Rule 15(a) and the amendment was proper. *See*

*Gaming Mktg. Sols., Inc.*, 528 F. Supp. 2d at 406 (finding that amendment was proper where no answer had been filed).

## 2. Service of the First Amendment Complaint

### i. Proper Recipient of Service

Aquila argues that service of the First Amended Complaint was improper under Delaware Code § 18-105 because it was directed to Aquila instead of its registered agent. *See* Del. Code tit. 6 § 18-105 (requiring service on "any director of the corporate registered agent"). It claims that the envelope was addressed to Aquila ("Aquila Alpha LLC c/o National Registered Agents" attention of the "Addressee, President or Legal Department"), not NRAI's directors. But Aquila was not served under Delaware Law. Instead, Bankruptcy Rule 7004(b)(3) applied to Aquila's service. Rule 7004(b)(3) does not require naming an officer or agent of the corporate entity or its registered agent. Instead, it permits service directed "to the attention of an . . . agent authorized by appointment or by law to receive service of process" in addition to requiring "mailing a copy to the defendant." Fed. R. Bankr. P. 7004(b)(3). No specific officer need be named on the envelope. *Gowan v. HSBC Mortg. Corp. (USA) (In re Dreier LLP)*, No. 10-5456, 2011

WL3047692, at *2 (Bankr. S.D.N.Y. July 22, 2011) ("Rule [7004(b)(3)] does not expressly require the plaintiff to name the officer.").

The Summons and First Amended Complaint were served on NRAI at the Dover address. *In re Orion HealthCorp*, 2022 WL 993850, at *2 (listing service as delivered to "C/O National Registered Agents, Inc. 160 Greentree Drive, Suite 101 Dover De 19904"). The Bankruptcy Court therefore did not err in finding that service at the Dover Address was proper under Rule 70004(b)(3). Aquila also argues that the First Amended Complaint was not properly served on it because it was never added as a party. This argument has already been rejected above.

### ii. Evidentiary Issues

Aquila argues that the Bankruptcy Court relied on inadmissible evidence in determining that the Hazlet Address was proper for service of the First Amended Complaint. The Bankruptcy Court relied on exhibits attached to an affidavit submitted by Frank Lazzara ("Lazzara"), an accountant hired by the Liquidating Trustee to lead FTI Consulting, Inc.'s ("FTI") forensic investigation of Debtors. The Bankruptcy Court denied motions to strike these exhibits. Aquila objects to two types of admitted documents attached to Lazzaro's affidavit: (1) emails sent by Parmar directing that Aquila's bank account be opened and that the Hazlet Address be set as Aquila's mailing address for the account; and (2) bank records listing

Hazlet address as Aquila's mailing address. The Bankruptcy Court's evidentiary

rulings are reviewed for abuse of discretion. *Komasa,* 767 F.3d at 155.

### a. Authentication

First, Aquila argues that the exhibits were not properly authenticated.

Federal Rule of Evidence 901 requires a party to authenticate a document by

providing sufficient "evidence to support a finding that the item is what the

proponent claims it is." Fed. R. Evid. 901(a). Rule 901's hurdle is not "particularly

high . . . and is satisfied if sufficient proof has been introduced so that a reasonable

juror could find in favor of authenticity or identification." *Crawford v. Tribeca*

*Lending Corp.*, 815 F.3d 121, 126 (2d Cir. 2016) (internal quotation omitted).

Aquila claims that Lazzara could not have authenticated the records because

he lacked personal knowledge of their creation. But this is not a requirement for

the authentication of written documents in the Second Circuit. *See Komasa,* 767

F.3d at 155 ("The custodian need not have personal knowledge of the actual

creation of the document to lay a proper foundation." (internal quotation omitted)).

"[C]ircumstantial evidence of the authenticity of the underlying documents through

the testimony of a witness knowledgeable about them" is enough. *Feltman v. Tri-*

*State Emp. Serv. (In re TS Emp., Inc.)*, 602 B.R. 840, 848 (S.D.N.Y. 2019).

At the evidentiary hearing, Lazzara testified that the email and bank records

came from CHT's servers and records belonging to Debtors during FTI's

investigation of CHT. He explained his "personal[]" familiarity with CHT's records and communications over email, as well as that FTI was the custodian of Debtors' business records. Lazzara's testimony and knowledge of CHT's records provided enough circumstantial evidence to authenticate the records, and the Bankruptcy Court did not abuse its discretion by deeming them authenticated.

### b. Hearsay

Aquila next claims the documents were hearsay not falling into any exception. It maintains that they do not qualify as CHT's business records because they belonged to Aquila. Documents are admissible as business records if their custodian or an otherwise qualified witness testifies that:

> (a) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (b) the record was kept in the course of a regularly conducted activity; (c) making the record was a regular practice of that activity; (d) the custodian certifies the record; and (e) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

*Abascal v. Fleckenstein*, 820 F.3d 561, 565 (2d Cir. 2016) (citing Fed. R. Evid. 803(6)(a–e)). The exception's purpose "is to ensure that documents were not created for personal purposes or in anticipation of any litigation so that the creator of the document had no motive to falsify the record in question." *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010). It "has been construed generously in favor of admissibility, due to the general trustworthiness of regularly kept records

12

and the need for this type of evidence in many cases." *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 421 (S.D.N.Y. 2011). Importantly, "documents may properly be admitted under this Rule as business records even though they are the records of a business entity other than one of the parties, and even though the foundation for their receipt is laid by a witness who is not an employee of the entity that owns and prepared them." *Saks Int'l, Inc. v. M/V Exp. Champion*, 817 F.2d 1011, 1013 (2d Cir. 1987). Bank records may be deemed trustworthy via judicial notice of the "nature of the business and the nature of the records." *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 691-92 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016).

The documents in question include Parmar's instructions to open Aquila's bank account, the account's opening in accordance with his instructions, and the use of the Hazlet Address as Aquila's mailing address. Because these are instructions sent via email, they describe contemporaneous events. *See In re Lyondell Chem. Co.*, No. 09-10023 (GCM), 2016 WL 6108526, at *3 (Bankr. S.D.N.Y. Oct. 19, 2016) (Emails "which describe events at about the same time as they occur, satisfy the contemporaneous requirement."). Lazzara testified that he was familiar with how emails and bank documents were obtained and kept during CHT's business activities. And Parmar's directives and records regarding the Mortgage and Aquila's mailing address were central to the purpose Aquila was

13

established for in the first place. Keeping records of these transactions would then naturally be a routine practice of Aquila, and there were no reasons to believe it was done in anticipation of litigation or is otherwise untrustworthy.

Given Lazzara's familiarity with the records, it is immaterial that Aquila's bank records did not initially belong to debtors. *See Saks Int'l, Inc. v. M/V Exp. Champion*, 817 F.2d at 1013. Petrozza testified that Parmar created Aquila using his role as the CEO and chairman of CHT in service of a scheme to transfer Debtors' assets, and that Parmar established Aquila's mailing address as "[Parmar's] offices." (R. 2087:8-10). These actions incorporated Aquila's bank account into Debtors' business records. *United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992) ("Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity."). Finally, that Aquila's bank records consist of a statement and account request confirmation that were automatically produced by a bank constitutes circumstantial evidence sufficient to support their trustworthiness. The Bankruptcy Court therefore did not abuse its discretion by admitting the emails and bank records.

### 3. Joinder to the Second Amended Complaint

Aquila next argues that Debtors failed to obtain leave to add it as a party to the Second Amended Complaint, a task it argues was necessary because of its

earlier argument that it was never properly added to the First Amended Complaint. However, Aquila's attacks on the First Amended Complaint have already been rejected above, and the Bankruptcy Court explicitly granted the Liquidating Trustee permission in its July 24, 2020, order "to file an amended complaint to realign the parties" and state "the assigned claims." (R. 168). This directive granted permission to include Aquila as a defendant because it was already a proper party to the First Amended Complaint.

Aquila also argues that service of the Second Amended Complaint was necessary because the First Amended Complaint did not properly add Aquila as a defendant, and that the Bankruptcy Court erred in relying on inadmissible evidence to determine that the Hazlet Address was proper for service. Both of these arguments have already been addressed and dismissed above. The Bankruptcy Court therefore did not err in determining that service of the Second Amended Complaint was unnecessary and properly executed in any event.

### 4. Service of the Default Motion

Aquila argues that the Default Motion was improperly served. Local Rules require the service of a default motion on the defaulting party or its attorney. *See* E.D.N.Y. LBR 7055-1 ("A default judgment may be sought only by motion, which shall be served on the defaulting party, the defaulting party's attorney, if any, and, except in an adversary proceeding to determine discharge ability, the trustee.").

The Bankruptcy Court found that it was served at both the Dover and Hazlet Addresses and emailed to Simpson. Aquila does not claim to have had a lawyer at the time the Default Motion was filed, and service was made at the Hazlet Address, which was Aquila's last known address. *See* Fed. R. Civ. P. 5(b)(2)(C) (allowing the service of motions by "mailing it to the person's last known address"). Aquila argues once more that the Bankruptcy Court wrongly approved service at the Hazlet Address, but this argument has been rejected above.

Aquila also suggests that the Liquidating Trustee should have known Petrozza was Aquila's owner and served him instead because he testified to that fact in a separate adversary proceeding involving the parties. Aquila argues that this means service should have been mailed to Petrozza, not the Hazlet Address. But this does not make service to Aquila's last known address, which is allowed under Rule 5(b)(2)(C), improper. The Court also enjoys "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Hayles v. Aspen Properties Grp., LLC*, No. 1:16-CV-08919-MKV, 2020 WL 5764371, at *6 (S.D.N.Y. Sept. 28, 2020) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)). Even if the Bankruptcy Court erred in not

requiring service on Petrozza, this would not necessarily require vacating the default judgment.

## B. Aquila's Motion to Set Aside the Default Judgment

The Bankruptcy Court denied Aquila's Rule 60(b) motion after applying the Second Circuit's test for relief from a default judgment, which asks "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996) (internal quotation omitted). It is the movant's burden to establish "that their default was not willful, that they have meritorious defenses," and that the plaintiff will not be prejudiced by reopening the judgment. *State St. Bank & Tr. Co. v. Inversiones Errazuriz, Limitada*, 230 F. Supp. 2d 313, 316 (S.D.N.Y. 2002). "[I]f the moving party fails to make even one of the three aforementioned showings, vacatur should be denied." *Id.* However, given the "strong public policy favor[ing] resolving disputes on the merits," courts often "resolve reasonable 'doubts in favor of the party seeking relief.'" *Id.* (quoting *Am. All. Ins.*, 92 F.3d at 61; *Barnes v. Printron,*

*Inc.*, No. 93 CIV. 5085 (JFK), 1999 WL 335362, at *3 (S.D.N.Y. May 25, 1999)).

The Bankruptcy Court found that each of these factors weighed against vacatur.

### 1. Willfulness

The Bankruptcy Court determined that Aquila's default was willful because

it was served both amended complaints and the default motion, and because Aquila

was conscious of the proceedings against it but failed to appear or file any

responsive papers. Conduct is willful if it "is more than merely negligent or

careless," *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998),

or "egregious and not satisfactorily explained," *McNulty*, 137 F.3d at 738.

The Bankruptcy Court found that Petrozza had been aware of the adversary

proceeding since at least July 21, 2020, when he filed papers in a separate

adversary proceeding that bore the caption of this case. The Bankruptcy Court

found Petrozza's testimony to the contrary not credible, noting that "Aquila's

failure to respond to the First Amended Complaint was not an inadvertent mistake

or a result of confusion," but that it "selectively decided how and when it would

participate in the case, and for nearly three years, it chose to ignore it." *In re Orion*

*HealthCorp*, 2022 WL 993850, at *9. *See McNulty*, 137 F.3d at 736 (affirming

finding of willful default where appellant ignored "repeated letters . . . advising

him that the [plaintiff] was about to move for a default" and failed to file "any

motion to vacate the default judgment until some eight months after its entry").

Aquila maintains that Petrozza's claims of ignorance were true. However, it

provides no evidence as to how or why Petrozza could know that the adversary

proceeding affected his other companies without knowing that it impacted Aquila.

A Bankruptcy Court's determination as to the credibility of a witness is given

"strong deference" by a reviewing district court. *In re Pisculli*, 426 B.R. at 59.

Aquila therefore fails to call into doubt the Bankruptcy Court's finding that

Petrozza's testimony was not credible.

## 2. Meritorious Defenses

Aquila argues that it established multiple meritorious defenses. The

requirement to demonstrate a meritorious defense "is subject to a low threshold"

that can be satisfied when defendants "deny all material allegations and stand

ready to assert several affirmative defenses." *Holford USA Ltd. Inc. v. Harvey*, 169

F.R.D. 41, 44 (S.D.N.Y. 1996). "[T]he defendant need not establish his defense

conclusively, but he must present evidence of facts that, if proven at trial, would

constitute a complete defense." *New York v. Green*, 420 F.3d 99, 109 (2d Cir.

2005) (quoting *McNulty*, 137 F.3d at 740). Aquila reasserts the procedural defenses

the Court has already rejected above. It also argues that the Second Amended

Complaint was time barred and seeks relief unavailable under applicable law. The

Bankruptcy Court held that Aquila failed to "provide, or even allege, credible facts in support of" these defenses. *In re Orion HealthCorp*, 2022 WL 993850, at *9.

### i. Statute of Limitations

The Bankruptcy Court rejected Aquila's statute of limitations argument:

> "Aquila claims that the statute of limitations provides a complete defense, arguing that the Second Amended Complaint cannot be prosecuted against Aquila because it cannot 'relate back' to the First Amended Complaint, and that the Plaintiff's claims were barred when the Second Amended Complaint was filed. This defense rests solely on the incorrect assertion that the First Amended Complaint is not effective as to Aquila."

*Id.* at *10. This Court, too, has already found above that the First Amended Complaint properly added Aquila as a defendant.

Bankruptcy Code § 546(a) required that the adversary proceeding against Aquila be filed within "2 years after the entry of the order for relief." 11 U.S.C. § 546(a)(1). "The commencement of a voluntary case," as occurred when Debtors filed the petition for the adversary proceeding on March 16, 2018, "constitutes an order for relief," and is therefore the relevant date for the start of the statute of limitations here. 11 U.S.C. § 301(b). Debtors filed the First Amended Complaint on June 4, 2018, well within two years of that date. Because the Court rejects Aquila's claim that it was improperly joined to the First Amended Complaint, the Second Amended Complaint's filing date is irrelevant to this inquiry. This is because the Second Amended Complaint lodged no new claims or allegations

against Aquila, featuring a "reasonable measure of common ground with the allegations of" the First Amended Complaint, and therefore related back to it. Fed. R. Civ. P. 15(c)(2); *Silverman v. H.I.L. Assocs. (In re Allou Distribs., Inc.)*, 387 B.R. 365, 397 (Bankr. E.D.N.Y. 2008).

### ii. Relief Sought by the Second Amended Complaint

Next, Aquila argues that the Second Amended Complaint sought relief that was not cognizable. The Default Judgment ordered the transfer of the Mortgage to Debtors. Aquila argues that the Liquidating Trustee was not entitled to seek the Mortgage, but only the $3.8 million that Debtors gave to Aquila for Aquila to buy the mortgage. Because the mortgage was never Debtors' property, and is worth more than $3.8 million, according to Aquila, they could not sue to recover it.

Under Bankruptcy Code § 548(a)(1), a "trustee may avoid any transfer . . . of an interest of the debtor in property," or "any obligation . . . incurred by the debtor," including the debtor's interests in property "that would have been preserved for the benefit of the bankruptcy estate but for the alleged transfer." 11 U.S.C. § 548(a)(1); *In re Extended Stay, Inc.*, No. 11-02254, 2020 WL 10762310, at *75 (Bankr. S.D.N.Y. Aug. 8, 2020) (cleaned up). A liquidating trustee may recover the transferred property or its value—"the physical asset itself" *or* "the value derived" from it. 11 U.S.C. § 550(a). "[T]he primary consideration in determining if funds are property of the debtor's estate is whether the payment of

those funds diminished the resources from which the debtor's creditors could have sought payment." *In re Extended Stay, Inc.*, 2020 WL 10762310, at *76.

The Bankruptcy Court found that CHT had an interest in the $3.8 million it transferred to Aquila that Aquila used to purchase the Mortgage, enabling the Liquidating Trustee to recover the Mortgage. Those funds would have been available to Debtors' creditors were it not for Aquila's fraudulent transfer. The "value derived" from this transferred property was therefore the Mortgage Aquila bought using the $3.8 million. 11 U.S.C. § 550(a). Aquila highlights that the Mortgage's value is now far greater than the $3.8 million initially transferred to support its purchase, but that difference is immaterial. The facts here are also not analogous to the scenario Aquila points to in *In re Bean*, 252 F.3d 113 (2d Cir. 2001), which concerned recovery from a debtor who had already given the liquidating trustee equity from the sale of real property. *Id.* at 116. Here, the Mortgaged property has not been liquidated. In any event, since Aquila had failed to show that its default was not willful, relief under Rule 60(b) was already foreclosed before the Bankruptcy Court reached this question. *See State St. Bank & Tr. Co.*, 230 F. Supp. 2d at 316 ("if the moving party fails to make even one of the three [Rule 60(b)] showings, vacatur should be denied").

### 3. Prejudice

Imposing delay alone is insufficient to establish prejudice under Rule 60; the plaintiff must also show "something more," such as that "delay may thwart plaintiff's recovery or remedy . . . result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Green*, 420 F.3d at 109 (internal quotations omitted). At the Rule 60(b) stage, it is a defendant's burden to establish that vacatur will not prejudice the plaintiff. *See Id.* ("we find no error in the District Court's conclusion that Defendants failed to show a lack of prejudice to the [plaintiff].").

The Bankruptcy Court found that vacatur would prejudice the Liquidating Trustee because allowing the statute of limitations to run would likely prevent Debtors from recovering assets for its creditors by "permitting outstanding taxes owed on the Colts Neck Property to continue to accrue" and risking "a tax lien foreclosure." *In re Orion HealthCorp*, 2022 WL 993850, at *10. The passage of additional time could also complicate state foreclosure proceedings related to the Mortgage by allowing "[s]ophisticated foreclosure defendants" to "use the passage of time as the basis for a defense to defeat the enforcement of the Colts Neck Mortgage." *Id.*

Aquila argues that Debtors failed to establish prejudice because the injuries they claimed would result from delay actually occurred because of Debtors' own

23

delay in moving for default—which they did three years after Aquila failed to answer the First Amended Complaint. It also argues that Debtors failed to establish evidence that delay would harm their estate tax liability. But Aquila builds its argument on the false assertion that it was Debtors' burden to show that they would be prejudiced by vacatur. At the Rule 60(b) stage, it was *Aquila's* burden to demonstrate that prejudice would not result. *See State St. Bank & Tr. Co.*, 230 F. Supp. 2d at 316. Furthermore, Debtors moved for default only six months after the Second Amended Complaint was filed.

  Finally, Aquila renews this same argument to contend that the Bankruptcy Court erred in granting Debtors the Mortgage because Debtors failed to allege their ownership of it in their Default Motion or Second Amended Complaint. But Debtors were entitled to recover the mortgage for the reasons explained above, specifically that CHT had an interest in the $3.8 million transferred from its bank account to support Aquila's purchase of the Mortgage, and that the value derived from this transferred property was the Mortgage Aquila bought using those funds.

## IV. CONCLUSION

The Bankruptcy Court's Order denying Aquila's motion to vacate the default judgment against it is affirmed. The clerk shall file this Memorandum and Order in both cases listed in the caption.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 22, 2023

25